**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**
**CIVIL ACTION NO: 1:26-cv-803**

| | |
|---|---|
| ABDULRAHMAN RAGEH, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; J. NIKLAS ULRICH, M.D., individually and in his official capacity; DONALD BUDENZ, M.D., individually and in his official capacity; and DAVID FLEISCHMAN, M.D., individually and in his official capacity,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Defendant the University of North Carolina at Chapel Hill ("UNC-CH") and individual defendants J. Niklas Ulrich, Donald Budenz, and David Fleischman ("Individual Defendants") (collectively, "Defendants") submit this Memorandum in support of their Motion to Dismiss (D.E. 8).

In 2022, Plaintiff Abdulrahman Rageh was a vitreoretinal fellow at UNC-CH's School of Medicine. Following a tumultuous fellowship, in which Plaintiff's supervisors, including Defendants Ulrich and Budenz, raised

repeated patient safety concerns involving Plaintiff, Plaintiff's fellowship was terminated.

Plaintiff now brings suit because Defendants Budenz and Fleischman accurately described the concerns present during his fellowship in Postgraduate Training Verification Forms sent to state medical licensing boards. For the reasons stated below, Plaintiff's claims are without merit and should be dismissed.

## STATEMENT OF THE CASE

Plaintiff commenced this action by filing a Complaint in Orange County Superior Court on May 5, 2026. D.E. 4. Defendants removed the case to this Court on August 12, 2026. D.E. 1. Defendants moved to extend the time to respond to Plaintiff's Complaint on August 14, 2026, and the Court granted the motion. D.E. 7. Defendants now timely move to dismiss Plaintiff's Complaint.

## STATEMENT OF THE FACTS

Plaintiff is an ophthalmologist who began a vitreoretinal fellowship at UNC-CH in August 2022. D.E. 4 ¶¶ 6, 15.[1] Soon after he began his fellowship, Defendant Ulrich, among others, began voicing concerns about Plaintiff's competence and the safety for the patients in Plaintiff's care. ¶ 18. At some point during his fellowship, Plaintiff "raised concerns regarding unfair and

---

1 All paragraph citations are to the Complaint, D.E. 4.

discriminatory treatment." ¶ 21. After this, the Individual Defendants had further concerns about Plaintiff's competence and Plaintiff's fellowship was ultimately terminated. ¶¶ 22-23.

Years later, in 2025 and 2026, Defendants Budenz and Fleischman submitted Postgraduate Training Verification Forms to state licensing boards on behalf of Plaintiff. ¶¶ 25, 30. In those forms, Budenz and Fleischman noted that during Plaintiff's fellowship there were patient safety concerns and that Plaintiff's ability to independently treat patients was restricted. ¶¶ 26, 31. Plaintiff alleges those statements are false. ¶¶ 29,33.

## QUESTIONS PRESENTED

I. Are Plaintiff's intentional tort claims and § 1983 claims against UNC-CH and the Individual Defendants barred by sovereign immunity?

II. Has Plaintiff failed to state a defamation claim against the Individual Defendants in their individual capacities?

III. Has Plaintiff failed to state a tortious interference with prospective economic advantage claim against the Individual Defendants in their individual capacities?

IV. Has Plaintiff failed to state a claim for negligence or gross negligence against Defendants?

## STANDARD OF REVIEW

Under Rules 12(b)(1) and 12(b)(2), the plaintiff has the burden of showing that the court has jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (subject-matter jurisdiction); *Mylan Labs, Inc. v. Akzo*,

2 F.3d 56, 60 (4th Cir. 1993) (personal jurisdiction). Questions of sovereign immunity are appropriately resolved under both Rules 12(b)(1) and 12(b)(2). *Aliksa v. N.C.R.R. Co.*, No. 1:17-CV-428, 2018 WL 3466948, at *1 n.1 (M.D.N.C. July 18, 2018).

Under Rule 12(b)(6), the Court must accept all well-pleaded allegations as true, but a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

All of Plaintiff's claims warrant dismissal. First, Plaintiff's intentional tort claims and § 1983 claims against UNC-CH and the Individual Defendants in their official capacities are barred by sovereign immunity. Second, Plaintiff's defamation claim fails because the statements were substantially true, Plaintiff has not sufficiently alleged publication, and the statements were subject to a qualified privilege. Third, Plaintiff has not stated a claim for tortious interference with prospective economic advantage because he has not identified any contract or opportunity that Defendants allegedly interfered with. Finally, Plaintiff has failed to state a claim for negligence or gross

negligence against UNC-CH or the Individual Defendants in their official capacities because any such claim must be brought in the Industrial Commission, and failed to state a claim for negligence or gross negligence against the Individual Defendants in their individual capacities because he has not alleged they owed Plaintiff a duty of care or that the alleged negligent act was negligent. For these reasons, explained in more detail below, Plaintiff's Complaint should be dismissed.

## I. Plaintiff's Intentional Tort Claims and § 1983 Claim Against UNC-CH and the Individual Defendants in their Official Capacities are Barred by Sovereign Immunity

"The common law doctrine of sovereign immunity is well-established in North Carolina and prevents a claim for relief against the State except where the State has consented or waived its immunity." *Cedarbrook Residential Ctr., Inc. v. N. Carolina Dep't of Health & Hum. Servs.*, 383 N.C. 31, 44–45, 881 S.E.2d 558, 569, *reh'g denied sub nom. Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 882 S.E.2d 658 (N.C. 2023). The State and its agencies are therefore "immune from suit unless and until [the State] has expressly consented to be sued." *Guthrie v. State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983).

Courts have repeatedly affirmed that the University of North Carolina and its constituent institutions are "state agencies" that are protected by sovereign immunity. *See, e.g., Kawai Am. Corp. v. Univ. of N. Carolina at*

*Chapel Hill*, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) ("The University is a state agency to which the doctrine of sovereign immunity applies."); *Swauger v. Univ. of N. Carolina at Charlotte*, 259 N.C. App. 727, 728, 817 S.E.2d 434, 436 (2018) (same).

Moreover, although the State has waived its immunity from suit in a limited capacity through the Tort Claims Act, intentional torts committed by agents and officers of the State are not compensable under that statute. *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013). Likewise, § 1983 "does not provide . . . a remedy against a State for alleged deprivations of civil liberties," and North Carolina has not waived its sovereign immunity from § 1983 claims. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Huang v. Bd. Of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir. 1990); *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002).

To the extent the Individual Defendants are sued in their official capacity, state sovereign immunity applies with equal force to them. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020) (quoting *Will*, 491 U.S. at 71). In other words, an official-capacity suit is "no different from a suit against the State itself." *Id.* Thus, "State officials sued in their official capacity for damages" are also

protected by sovereign immunity. *Al-Deen v. Trs. of Univ. of N.C., Wilmington*, 102 F. Supp. 3d 758, 764 (E.D.N.C. 2015) (citing *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir.2003)).

For these reasons, Plaintiff's § 1983 claim and intentional tort claims (defamation per se and tortious interference with prospective economic advantage) must be dismissed against UNC-CH and the Individual Defendants in their official capacities.[2]

## II. Plaintiff Fails to State a Claim for Defamation Against the Individual Defendants in their Individual Capacities.

"In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Craven v. Cope*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008). North Carolina recognizes two distinct types of defamation: libel (which pertains to written or printed statements) and slander (which pertains to oral communications). *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020).

---

[2] Because Plaintiff only seeks money damages from the Individual Defendants the *Ex parte Young* exception does not apply. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018) (noting that "[r]elief that is retrospective in nature, such as the payment of . . . money which that court held should have been paid, but was not, does not fall under the *Ex parte Young* exception").

Libel per se is "a publication by writing, printing, signs or pictures which, when considered alone without innuendo, colloquium or explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 409 (1984).

Here Plaintiff alleges that Dr. Fleischman and Dr. Budenz made defamatory statements in Postgraduate Training Verification forms to state medical licensing boards.[3] ¶¶ 25-33. These statements related to patient safety concerns and restrictions that were placed on Plaintiff's patient care responsibilities in the final months of his fellowship. ¶¶ 26, 30. For the following reasons Plaintiff has failed to allege a defamation claim.

**a. Plaintiff's Claim Fails because the Allegedly Defamatory Statements Were True**

The truth of a statement is a complete defense to a libel claim. *Holleman v. Aiken*, 668 S.E.2d 579, 587 (N.C. App. 2008). When evaluating falsity in

[3] Plaintiff does not identify any specific statement made by Ulrich that he alleges were defamatory. For this reason alone, any defamation claim against Ulrich should be dismissed. *See Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005) (dismissing defamation claim when complaint did "not directly set out any false and defamatory statements which defendants are alleged to have made").

libelous statements, a court "overlooks minor inaccuracies and focuses on *substantial truth*." *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 67, 846 S.E.2d 647, 675 (2020) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)) (emphasis in original). Minor inaccuracies do not lead to a finding of falsity "so long as 'the substance, the gist, the *sting*, of the libelous charge be justified.'" *Id.* (quoting *Masson*, 501 U.S. at 517) (emphasis in original).

Under North Carolina law, the doctrine of collateral estoppel, or issue preclusion, bars the relitigation of issues that were actually determined in a prior action. *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). For collateral estoppel to apply, the issue in question must be identical to an issue actually litigated and necessary to the judgment, the prior action must have resulted in a final judgment on the merits, and traditionally the parties must have been identical or in privity with each other. *Id.* North Carolina does not require strict mutuality of estoppel in defensive uses of collateral estoppel so long as the party against whom collateral estoppel is being asserted had "the full and fair opportunity to litigate a matter." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 434, 349 S.E.2d 552, 560 (1986).

Here, Plaintiff has another lawsuit pending before this Court involving the same underlying facts. *See Rageh v. Univ. of N.C. at Chapel Hill et al.*, 1:24-cv-366 (M.D.N.C.) (hereinafter "*Rageh I*"). In *Rageh I*, like here, Plaintiff

named UNC-CH, Dr. Budenz, and Dr. Ulrich as defendants. *Rageh v. Univ. of N. Carolina at Chapel Hill,* No. 1:24-CV-336, 2026 WL 1960640, at *1-2 (M.D.N.C. July 7, 2026).

In *Rageh I*, like here, Plaintiff alleged that defendants fabricated false patient safety concerns during his fellowship and, among other things, reported those concerns in forms submitted to medical boards. *Id.* at *4, 8-9 Furthermore, in *Rageh I*, Plaintiff alleged that the termination of his fellowship was discriminatory and retaliatory, and defendants' patient safety concerns were merely pretextual. *Id.* at *3-5.

In *Rageh I*, this Court granted summary judgment in favor of defendants on Plaintiff's discrimination claims, tortious interference with contract claim, tortious interference with prospective economic advantage claim, and defamation claim. *Id.* at *9.[4] Necessary to the Court's judgment was the finding that Plaintiff's supervisors "had serious safety concerns about Dr. Rageh's performance as a vitreoretinal fellow, and those concerns justified the reduction in his training opportunities." *Id.*

Specifically, when evaluating Plaintiff's tortious interference with contract claim the Court found that defendants were justified in interfering with Plaintiff's contract because they "were motivated, at least in part, by

[4] The Court denied summary judgment on Plaintiff's Title VII and ADEA retaliation claims. *Rageh I*, 2026 WL 1960640, at *9.

legitimate safety concerns." *Id.* at *7. Likewise, in reaching its conclusion that Plaintiff had not demonstrated defendants' proffered reason of shortening his fellowship due to patient safety concerns was pretextual, the Court emphasized "as to the many other incidents, incidents which raise obvious safety concerns, [Plaintiff] points to no record evidence rebutting the accounts of Drs. Ulrich and Zhang. His other suggestions of fabrication and exaggeration are based only on speculation and unsupported inferences." *Id.* at 4.

Here the question is whether Defendants had legitimate patient safety concerns regarding Plaintiff. If they did, their allegedly defamatory statements are substantially true and are not actionable.[5] In *Rageh I*, Plaintiff had an opportunity to litigate the issue of whether the patient safety concerns were legitimate. Following that opportunity, this Court issued a final judgment on nearly all his claims. In that judgment, the Court relied on its finding that the patient safety concerns were legitimate. Plaintiff is now collaterally estopped from arguing the patient safety concerns were false. As a result, his defamation claim fails.

---

[5] The allegedly defamatory statement by Dr. Budenz was that Plaintiff was "restricted from independent patient care for the last 3 months of fellowship." In the Court's finding of undisputed facts in *Rageh I* it notes that "[o]n January 4, 2023, Dr. Ulrich told Dr. Rageh that his fellowship was terminated and that he would be limited to seeing patients during his once-weekly clinic hours." *Rageh I*, 2026 WL 1960640, at *1. This statement, likewise, is substantially true.

**b. Plaintiff Has Not Alleged Publication of the Allegedly Defamatory Statements**

Even if Plaintiff's defamation claim is not subject to collateral estoppel it fails because Plaintiff has not alleged that any purported statements were published. The statements Plaintiff identified were made in a Postgraduate Training Verification Form to a state medical licensing board. This analysis is similar to the intra-corporate immunity rule, which expresses the rationale that communications between officers of the same corporation in the due and regular course of corporate business, or between different offices of the same corporation, are not publications to third persons. *See Lovelace v. Long John Silver's Inc.*, 841 S.W.2d 682, 684 (Mo. Ct. App. 1992). Furthermore, courts have held that communications over performance reviews do not constitute "publication" for purposes of the tort of defamation. *See LuAllen v. Home Mission Bd. of the S. Baptist Convention*, 188 S.E.2d 138, 140 (Ga. Ct. App. 1972). Submitting a training verification form to a state medical board does not constitute publication to subject Defendants to a cause of action in defamation.

**c. The Statements Are Subject to a Qualified Privilege**

Finally, even if Plaintiff has alleged that the Individual Defendants made defamatory statements, those statements are subject to a qualified privilege. North Carolina courts have recognized that "a qualified privilege

exists as to statements made by medical professionals relating to the treatment of patients." *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, No. 3:20-CV-00382-RJC-DSC, 2022 WL 1572732, at *13 (W.D.N.C. Feb. 25, 2022). This qualified privilege covers healthcare professionals that report "employee work performance issues that implicate patient care." *Schwarz v. St. Jude Med., Inc.*, 270 N.C. App. 720, 729, 842 S.E.2d 119, 126 (2020). The privilege exists because the "health care industry plays a vital and important role in our society and encouraging employees to share concerns about healthcare services ensures the quality and trustworthiness of the care which the medical community provides." *Id.* (cleaned up).

The allegedly defamatory statements that Plaintiff has identified fall squarely into this qualified privilege. They involve "repeated safety concerns" and the fact that Plaintiff was "restricted from independent patient care" as a result. ¶¶ 26, 31.

## III. Plaintiff Fails to State a Claim for "Retaliation (42 U.S.C. § 1983)" Against the Individual Defendants in their Individual Capacities

The first step in any § 1983 claim "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff cites no constitutional provision in his Complaint. This warrants dismissal. *Dogwood Realty, Inc. v. Goodwin*, 151 F. App'x 290, 292 (4th Cir. 2005).

However, even if the Court can infer a First Amendment claim by Plaintiff's allegations that he "raised concerns," and then was subject to retaliation, he nevertheless fails to state a claim. To state a claim for First Amendment retaliation Plaintiff must allege (1) he engaged in constitutionally protected speech, (2) defendants took some action that adversely affected his First Amendment rights, and (3) his constitutionally protected speech was a but-for cause of the adverse action. *Watson v. Wake Cnty. Pub. Sch. Sys.*, 797 F. Supp. 3d 591, 610 (E.D.N.C. 2025). Here Plaintiff has not alleged that he engaged in constitutionally protected speech or that his speech was a but-for cause of his termination or dissemination of statements regarding patient safety concerns.

**a. Plaintiff Has Not Alleged that He Spoke on a Matter of Public Concern**

Plaintiff alleges that he "raised concerns regarding unfair and discriminatory treatment during his fellowship," and as a result Defendants retaliated against him. ¶¶ 21-22, 48. Because his alleged protected speech was unrelated to matters of public concern, he has failed to state a claim.

Whether a plaintiff spoke as a private citizen about a matter of public concern or as an employee about a matter of private interest "rests on whether the public or community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially

a private matter between employer and employee." *Edwards v. City of Goldsboro*, 178 F.3d 231, 247 (4th Cir. 1999). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton County Sch. Dist.,* 981 F.2d 152, 156 (4th Cir. 1992). In short, courts must be wary of "attempt[s] to constitutionalize the employee grievance." Connick v. Myers, 461 U.S. 138, 154 (1983).

Here, Plaintiff's allegations do not create a plausible inference that he was speaking on a matter of public concern. They are centered on *his* treatment during *his* employment. There is no indication that Plaintiff was addressing a systemic issue or that Plaintiff attempted to share his concerns outside the organization. Instead, Plaintiff describes precisely the type of personal complaint about conditions of employment that does not qualify as a statement protected by the First Amendment. ¶ 21; *see Stroman*, 981 F.2d at 156. As a result, he has not stated a claim for First Amendment retaliation.

**b. Plaintiff Has Not Alleged Causation**

Plaintiff's claim also fails because he did not allege facts showing a causal connection between his allegedly protected speech and his termination and dissemination of defamatory statements.

To establish causation, a plaintiff must plausibly allege that "but for" his protected speech, the defendant would not have taken the alleged retaliatory action. *Holsey-Hyman v. Edens*, No. 1:24CV296, 2025 WL 101168, at *5 (M.D.N.C. Jan. 15, 2025). The "causal requirement is 'rigorous.'" *Porter v. Bd. of Trs. of N. Carolina State Univ.*, 72 F.4th 573, 583 (4th Cir. 2023) (citing *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015)). "'[I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression, the [state actor] would not have taken the alleged retaliatory action.'" *Id.* (quoting *Raub*, 785 F.3d at 885) (alteration in the original).

Furthermore, "'[i]n order to establish [causation], a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity.'" *Id. at 582* (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)). "'Knowledge alone, however, does not establish a causal connection.'" *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

First, Plaintiff has neither alleged that the Individual Defendants had knowledge of his alleged protected activity nor that they were involved in his termination. This alone dooms his claim. Next, Plaintiff's causation argument is undercut by his allegations that Defendants began expressing patient safety concerns prior to his alleged protected activity and continued to express the

same patient safety concerns after his alleged protected activity. Finally, Plaintiff alleges that his fellowship was in 2022 and the allegedly defamatory statements occurred in 2025 and 2026. ¶¶ 15, 25, 30. The three to four years between the alleged protected activity and alleged retaliatory act is too long of a temporal gap to support an inference of causation.

Additionally, although Defendants Budenz and Fleischman are named insofar as they provided statements to medical boards regarding Plaintiff, Plaintiff does not appear to challenge any independent actions by Defendant Ulrich. *See* ¶ 27 (noting only that Plaintiff's final evaluation was "based on contemporaneous documentation from Dr. Ulrich."). But holding an official personally liable for constitutional violations "require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995)). For this reason, too, any individual-capacity claims against Ulrich should be dismissed in their entirety.

## IV. Plaintiff Fails to State a Claim for Tortious Interference with Prospective Economic Advantage Against the Individual Defendants in their Individual Capacities

Tortious interference with prospective economic advantage arises under North Carolina law where a party "maliciously induc[es] a person not to enter into a contract with a third person, which he would have entered into but for

the interference." *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 546 F. Supp. 3d 440, 454 (M.D.N.C. 2021) (quoting *Spartan Equip. Co. v. Air Placement Equip. Co.*, 140 S.E.2d 3, 11 (N.C. 1965)). A "mere expectation of a continuing business relationship is insufficient to establish such a claim." *Id.* (quoting *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016)). "Conclusory indications that a contract would have been formed but for a party's conduct, without more, are not sufficient to state a claim for relief." *Id.* Courts have found "pleadings which do not identify specific customers or specific prospective contracts are insufficient to survive dismissal." *Id.* (collecting cases).

Here, Plaintiff has not identified a specific contract, potential employer, or opportunity that the Individual Defendants purportedly interfered with. As a result, he has failed to state a plausible claim for relief. Indeed, Plaintiff specifies that his claim is based on mere "expectations" of business and employment relationships (¶ 52), which is insufficient to state a claim.

## V. Plaintiff Fails to State Claims for Negligence or Gross Negligence

### a. Any Negligence Claims Against UNC-CH or the Individual Defendants in their Official Capacities May Only Be Pursued in North Carolina's Industrial Commission

North Carolina's Tort Claims Act has waived sovereign immunity for negligence claims against the State. However, such claims may only be pursued in North Carolina's Industrial Commission. N.C. Gen. Stat. §143-291(a); *Kawai*, 152 N.C. App. at 165-66, 567 S.E.2d at 217-18.

Therefore, to the extent Plaintiff has stated this claim against UNC-CH and/or the individual Defendants in their official capacity such a claim may only be pursued in North Carolina's Industrial Commission. As a result, any negligence or gross negligence claims against UNC-CH and the Individual Defendants in their official capacities must be dismissed.

**b. Plaintiff Has Failed to State a Claim for Negligence or Gross Negligence Against the Individual Defendants in their Individual Capacities.**

To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. *See Stein v. Asheville City Bd. Of Educ.,* 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006). A claim for gross negligence requires allegations of "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002), (citing *Bullins v. Schmidt,* 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)). Conclusory allegations that "do more than list the elements of [a plaintiff's] negligence and gross negligence claims" are insufficient to plausibly state a claim. *Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 WL 7297876, at *13

(W.D.N.C. Aug. 13, 2018), *report and recommendation adopted,* No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), *aff'd,* 811 F. App'x 190 (4th Cir. 2020), citing *Iqbal*, 556 U.S. at 678.

First, Plaintiff has merely listed the elements of a negligence and gross negligence claim. ¶¶ 56-63. These conclusory allegations are insufficient to state a claim.

Second, Plaintiff has not alleged that the Individual Defendants owed him a duty of care, which is fatal to both his negligence and gross negligence claim. Supervisors are not liable to subordinates for negligence because of unfavorable reports of the subordinate's work. *Osborne v. Walker*, 48 N.C. App. 627, 629, 269 S.E.2d 281, 282 (1980). In fact, North Carolina courts have expressly declined to apply the tort of negligence "within the corporate relationship." *Id.* at 628, 269 S.E.2d at 281. The facts here are even more attenuated than the scenario in *Osborne*. There, the plaintiff alleged her supervisors were negligent in giving her negative performance reviews during the course of her employment. *Id.* The court refused to "extend the law of negligence" to create a legal duty between supervisors and subordinates in this context. *Id.* at 628, 269 S.E.2d at 282. If the law of negligence does not extend to negative performance reviews given during the course of employment it certainly does not extend to negative performance reviews given after the employment relationship has ended. Here, the alleged negligent acts occurred

when Plaintiff was no longer an employee of UNC-CH. ¶ 24. As a result, the Individual Defendants, as Plaintiff's former supervisors, did not owe Plaintiff a legal duty.

Third, to the extent Plaintiff's negligence or gross negligence claim is based on dissemination of false statements, for the reasons stated above in Section II.a, collateral estoppel bars Plaintiff from asserting those statements were false. This Court has previously determined Plaintiff's actions created "serious safety concerns." *See, e.g.*, *Rageh I*, 2026 WL 1960640, at *9. Because the statements were not false, Defendants were not negligent or grossly negligent in asserting them.

Fourth, Plaintiff may not package a defamation claim as a negligence cause of action. Indeed, "such an end-run around First Amendment strictures is foreclosed." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999). "[A] party who claims its reputation has been damaged by a false statement cannot circumvent the strictures of the law of defamation . . . by labeling its action as one for negligence. *EEE ZZZ Lay Drain Co. v. Lakeland Ledger Pub. Corp.*, No. 199CV145-T, 2000 WL 33422618, at *4 (W.D.N.C. Feb. 8, 2000) (quoting *Container Mfg., Inc. v. CIBA-GEIGY, Corp.*, 870 F. Supp. 1225, 1235-36 (D.N.J.1994)). Because Plaintiff's negligence and gross negligence claims are based on the same allegedly defamatory

statements and subsumed into the defamation claim, they should also be dismissed.

## CONCLUSION

For the reasons stated above, Defendants respectfully request the Court dismiss Plaintiff's Complaint with prejudice.

This the 9th day of September, 2026.

JEFF JACKSON
Attorney General

/s/ Allison C. Hawkins
Allison C. Hawkins
Assistant Attorney General
NC State Bar No. 53490
achawkins@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorney for Defendant*

## CERTIFICATE OF WORD COUNT

I certify that, in compliance with Local Rule 7.3(d), this brief is no more than 6,250 words according to the word processing software used to prepare this document.

This the 9th day of September, 2026.

/s/ Allison C. Hawkins
Allison C. Hawkins
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Plaintiff's counsel, Potso Mahlangeni-Byndon (potso@byndonlaw.com).

This the 9th day of September 2026.

/s/ Allison C. Hawkins
Allison C. Hawkins